**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AARON THOMPSON,

Plaintiff, Case No.

v. Hon.

BREMBO NORTH AMERICA INC.,

Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
Noah@hurwitzlaw.com

Emily K. Tyler (P72067)
EMILY TYLER LAW PLLC
*Attorneys for Plaintiff*
5566 Creekview Drive
Ann Arbor, MI 48108
(888) 610-8317
Emily@EmilyTylerLaw.com

---

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff Aaron Thompson ("Plaintiff"), by and through his attorneys, HURWITZ LAW PLLC and EMILY TYLER LAW PLLC, and hereby states the following:

## INTRODUCTION

1. Plaintiff Aaron Thompson served as a Production Supervisor at Defendant Brembo North America Inc.'s Homer, Michigan facility since November 23, 2021. Plaintiff had a seizure while driving on July 27, 2025, after which he received a life-changing diagnosis of epilepsy. Plaintiff experiences seizures up to five times a month and when it happens, he is more or less incapacitated; afterwards, he remains in a "postictal state," a recovery or cool-down period. Plaintiff was prescribed levetiracetam, which causes known side effects, including: changes in mood or behavior, problems with coordination, and unusual tiredness or weakness; the side effects proved to be too severe for him, causing him to miss a few more days of work and he received an unusual discipline for attendance: a three-day suspension in November 2025. Plaintiff's health caused him to miss work on just three days starting on March 30, 2026. Plaintiff texted his manager on March 31, 2026, stating he would need to use protected medical leave. Plaintiff was terminated a few weeks later "due to attendance," in April. This lawsuit seeks redress for Defendant's willful violations of the Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL § 37.1101, *et seq*., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

## JURISDICTION AND PARTIES

2. Plaintiff is an individual residing in Blackman Township, Jackson County, Michigan.

3. Defendant is a domestic for-profit corporation that transacts business in Homer, Calhoun County, Michigan. Plaintiff worked at Defendant's facility in Homer, Michigan.

4. The U.S. District Court for the Eastern District of Michigan has federal questions jurisdiction over his claims under the FMLA, pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's claim under the PWDCRA pursuant to 28 U.S.C. §

1367(a), as that claim arises from the same nucleus of operative facts.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b), as it is the district in which a substantial part of the events giving rise to Plaintiff's claims occurred.

**FACTUAL ALLEGATIONS**

6. Plaintiff began his employment with Defendant on November 23, 2021.

7. Plaintiff was a Production Supervisor.

8. Plaintiff performed his duties and responsibilities with a high degree of competence throughout his employment with Defendant. His work was viewed favorably by Defendant, as reflected by his promotions from Operator to Team Leader and later to Production Supervisor.

9. Plaintiff was promoted approximately every two years during his tenure, which further evidences his strong performance and professional advancement within the company.

10. On July 27, 2025, Plaintiff had a seizure while driving, and that caused him to be injured in a car accident.

11. Plaintiff was hospitalized for approximately one week and was diagnosed with: epilepsy, broken vertebras, TBI (Traumatic Brain Injury) and an actively present brain bleed.

12. Plaintiff experiences seizures up to five times a month and when it happens, he is more or less incapacitated; afterwards, he remains in a "postictal state," a recovery or cool-down period marked by debilitating symptoms including: confusion, exhaustion, fatigue, headache and difficulty speaking.

13. Plaintiff returned to work on August 17, 2025.

14. Defendant did not provide Plaintiff with any accommodation from when Plaintiff was diagnosed with epilepsy until Plaintiff was terminated.

15. Plaintiff was prescribed levetiracetam, which causes known side effects, including

changes in mood or behavior, problems with coordination, and unusual tiredness or weakness; the side effects proved to be too severe for him, causing him to miss a few more days of work approximately a week prior to November 4, 2026.

16. At the time, Plaintiff was unaware of leave available under the Family and Medical Leave Act ("FMLA"). As a result, Plaintiff requested to use his accrued vacation time for his medically necessary absence, and Defendant approved the request.

17. On November 4, 2025, Plaintiff missed several days of work due to a medical episode related to Plaintiff's epilepsy. Because Plaintiff was unfamiliar with FMLA, he asked Manager Mayank Patel about FMLA leave. Plaintiff's manager instructed him to contact Human Resources regarding FMLA.

18. On November 17, 2025, Plaintiff was disciplined for the first time since he was hired, allegedly for entering vacation time retroactively "without prior notification and approval," and Plaintiff had "failed to notify [his] manager or any member of HR in advance about [his] absences."

19. In the November 17, 2025, disciplinary notice, Defendant alleged that Plaintiff had a "deficit of 112 hours in ESTA and ha[d] exhausted all paid time off," and that Plaintiff had been "entering vacation time retroactively, without prior notification and approval, which is against policy."

20. Defendant was aware of Plaintiff's epilepsy and medical condition. Plaintiff's inability to notify the Defendant of the medical episode was a direct result of the condition itself and was not a voluntary refusal or intentional failure to communicate. Because Plaintiff's seizures and related medical episodes are sudden and unpredictable, Plaintiff is unable to anticipate the episode nor notify Defendant in advance that he was experiencing, or was about to experience, a

seizure or related medical emergency.

21. In addition to the discipline, Plaintiff received an unusually severe attendance-related disciplinary action on November 17, 2025. Although Defendant typically addressed similar attendance issues through a written warning or PIP (Performance Improvement Plan), Defendant imposed a three-day suspension against Plaintiff.

22. On the same day, Defendant also issued Plaintiff FMLA paperwork to complete.

23. On November 24, 2025, Plaintiff's neurologist filled out our Plaintiff's FMLA paperwork.

24. On November 25, 2025, Plaintiff submitted his completed FMLA paperwork to Defendant, and Defendant accepted Plaintiff's submission.

25. On February 25, 2026, after Plaintiff had already missed work due to a suspected seizure, Plaintiff informed Mayank Patel after the medical episode had concluded.

26. On March 8, 2026, after Plaintiff again missed work due to a suspected seizure, Plaintiff informed Mayank Patel after the medical episode had concluded.

27. Plaintiff received no response or communication from Mayank Patel regarding the absences, nor was Plaintiff spoken to or otherwise informed that informing his manager after the episodes occurred presented any issue.

28. Plaintiff's health caused him to miss work on just three days starting on March 30, 2026.

29. Plaintiff's health caused him to miss work on March 30, 2026, and due to postictal state symptoms, he was unable to notify Mayank Patel.

30. Plaintiff texted Mayank Patel on March 31, 2026, stating he would need to use FMLA for March 30, 2026, and March 31, 2026.

31. Plaintiff's medical condition caused him to miss work on April 1, 2026, and April 2, 2026. Plaintiff attempted to use accrued paid time off ("PTO") for these absences so that he could get compensated for the missed time; Defendant denied Plaintiff's request, characterizing it "retroactively requesting PTO." Despite denying Plaintiff's PTO request, Defendant did not issue Plaintiff any disciplinary action or written warning for these absences.

32. Plaintiff did not work on April 3, 2026, because he intended to report to work on April 4, 2026, when Defendant required additional weekend coverage. Plaintiff did not notify Mayank Patel about this scheduling change because, for several months prior, Plaintiff had regularly adjusted his schedule in this manner by taking a day or two off at the beginning of the week and then working later in the week when coverage was needed. Mayank Patel was aware of this regular practice.

33. Plaintiff returned to work on April 4, 2026. Upon his return, Plaintiff received no complaints, discipline or adverse feedback from Defendant regarding his absence.

34. Plaintiff terminated effective immediately on April 17, 2026.

35. Plaintiff was terminated "due to attendance and failure to communicate, recurring concerns have persisted. Despite numerous conversations, attempts to correct behaviors and concerns, no improvement has been made…. It was clearly defined that any further missed time without proper notification was grounds for termination.

36. In the termination letter dated April 17, 2026, the examples Defendant used to demonstrate the "serious attendance and communication concerns" include:

a. "Monday March 30, 2026: No call, no show"

b. "Tuesday, March 31, 2026: Late notification of absence (11pm)"

c. "Wednesday, April 1, 2026: No call, no show"

d. Friday, April 3, 2026: Did not work as discussed & expected”

37. At the time of these absences, Defendant was aware of Plaintiff’s epilepsy and medical condition.

38. At all relevant times, Defendant offered short-term disability benefits to its employees. Plaintiff, however, was unaware of the availability of short-term disability benefits, did not understand the process for requesting or utilizing such benefits, and was not informed by Defendant that he could seek short-term disability coverage for his medically related absences. As a result, Plaintiff used available PTO to account for his missed time.

**COUNT I**
**DISABILITY DISCRIMINATION AND**
**RETALIATION IN VIOLATION OF THE PWDCRA**

39. Plaintiff incorporates by reference the foregoing paragraphs.

40. At all relevant times, Defendant was an “employer” within the meaning of the PWDCRA, MCL § 37.1101, *et seq*.

41. Plaintiff has a “disability” within the meaning of the PWDCRA in that his epilepsy constitutes a determinable physical or mental characteristic that substantially limits one or more of Plaintiff’s major life activities.

42. Plaintiff was a qualified individual who, with or without reasonable accommodation, was able to perform the essential functions of his position as Production Supervisor.

43. Defendant discriminated against Plaintiff on the basis of his disability, in violation of the PWDCRA, by terminating his employment and by failing to accommodate his disability in good faith.

44. Defendant further retaliated against Plaintiff for requesting accommodations and

for opposing Defendant's discriminatory conduct, in violation of the PWDCRA.

45. Defendant's proffered reason for Plaintiff's termination is pretextual.

46. Defendant's actions were knowing and willful.

47. As a direct and proximate result of Defendant's violations of the PWDCRA, Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physician anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

48. As a direct and proximate result of Defendant's violations of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer in the future; he has been required to employe the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## RETALIATION IN VIOLATION OF THE FMLA

49. Plaintiff incorporates by reference the foregoing paragraphs.

50. At all relevant times, Plaintiff was an eligible employee under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Defendant was an employer subject to the FMLA.

51. Plaintiff's health condition is a "serious health condition" under the FMLA because it requires continuing treatment by a health care provider. 29 U.S.C. § 2611(11).

52. Plaintiff provided notice of the need for FMLA leave as soon as practicable under the circumstances of his health condition. To the extent Plaintiff was unable to comply with

Defendant's ordinary call in procedures, he was going through a medical episode and more or less incapacitated, hence excusing strict compliance pursuant to 29 C.F.R. § 825.303(c).

53. Plaintiff was terminated because he called in late regarding his FMLA-protected absence.

54. Because Plaintiff was unable to foresee when he would experience a medical episode and the need for leave was unforeseeable, Plaintiff was required to provide notice only as soon as practicable under the circumstances, consistent with 29 C.F.R. § 825.303(a).

55. By terminating Plaintiff for failing to provide advance notice, Defendant interfered with Plaintiff's rights under FMLA.

56. Defendant's actions in violation of the FMLA were knowing and willful

57. By terminating Plaintiff and interfering with Plaintiff's exercise of rights guaranteed under the FMLA, Defendant violated 29 U.S.C. § 2615(a)(1).

58. In terminating Plaintiff's employment, Defendant discriminated and retaliated against Defendant for taking protected leave under the FMLA, violating 29 U.S.C. § 2615(a)(2).

59. As a direct and proximate result of Defendant's interference with Plaintiff's FMLA rights and retaliation against Plaintiff for exercising his FMLA rights, Plaintiff suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

60. As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work in the future.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following relief:

A. Compensatory damages for monetary and non-monetary loss, including lost wages, salary, employment benefits, and other compensation denied or lost by reason of Defendant's violations;

B. Liquidated damages as provided under the FMLA, 29 U.S.C. § 2617(a);

C. Exemplary and punitive damages;

D. Prejudgment interest;

E. Attorneys' fees and costs; and

F. Such other relief as in law or equity may pertain.

Respectfully Submitted,
HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*

Noah S. Hurwitz (P74063)
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
noah@hurwitzlaw.com

Date: August 27, 2026

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AARON THOMPSON,

Plaintiff, Case No.

v. Hon.

BREMBO NORTH AMERICA INC.,

Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
Noah@hurwitzlaw.com

Emily K. Tyler (P72067)
EMILY TYLER LAW PLLC
*Attorneys for Plaintiff*
5566 Creekview Drive
Ann Arbor, MI 48108
(888) 610-8317
Emily@EmilyTylerLaw.com

---

**JURY DEMAND**

Plaintiff Aaron Thompson, by and through his attorneys, HURWITZ LAW PLLC and EMILY TYLER LAW PLLC, hereby demands a trial by jury of the issues in the above-captioned cause of action.

Respectfully Submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)

*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
noah@hurwitzlaw.com

Date: August 27, 2026